MACLIN v. HAYWOOD.

(*Jackson.* April 28, 1891.)

1. HUSBAND AND WIFE. *Antenuptial contract construed.*

Parties intending to marry contracted alone with reference to the wife's property, consisting, in part, of lands, as follows: "That all the property, real and personal and mixed, that she may have, own, or be entitled to at the date of the consummation of said marriage, shall be and remain hers for and during their joint lives; and then, at the death of either of them, the same is to go absolutely to the survivor of them, and the same is not liable, in any way, for the debts, contracts, or liabilities of said Haywood [the husband] so long as she lives."

*Held:* Husband and wife, after their marriage, together held the entire title to all of the wife's lands, with full power of disposition.

2. SAME. *Lands held by antenuptial contract may be lawfully conveyed.*

Lands held by husband and wife, or either of them, by virtue of an antenuptial contract, may be transferred with as much freedom as lands held by like title under any other contract. Unless heirs of the parties are named as beneficiaries under an antenuptial contract, their consent to disposition during the marriage of lands embraced therein is not essential.

Cases cited: 3 H. & M. (Va.); 1 P. Williams, 142, 622; 2 Vernon, 13; 1 Lev., 150, 237; 1 Atk., 265.

3. SAME. *Husband's relinquishment.*

After marriage the husband indorsed upon said antenuptial contract the following, viz.: "I hereby, out of the regard and esteem I have for my beloved wife, * * relinquish all the right that I might have to inherit her property in virtue of the within marriage-contract in case I should be the longest liver; and she on her part relinquishes all the right she might have to inherit my property in virtue of said contract."

Maclin *v.* Haywood.

The wife signed but did not acknowledge this relinquishment. Her lands were undisposed of at that date.

*Held:* The wife's relinquishment is void, but the husband's is valid and · effectual. They are not dependent and mutual—the husband's being made upon consideration of "regard and esteem" for the wife.

4. SAME. *Husband's deed to wife valid.*

Husband's deed to wife for land passes the title to her.

5. SAME. *Wife's relinquishment to husband void.*

Wife's relinquishment by deed to her husband of any interest she would take in his estate upon his death is void.

Cases cited and approved: Watkins *v.* Watkins, 7 Yer., 283; Parham *v.* Parham, 6 Hum., 287.

6. SAME. *"Regard and esteem" as a consideration.*

"Regard and esteem" for the wife is a sufficient consideration to support a deed from husband to wife.

7. DEED. *Description of land, sufficient when.*

The description of the property in the husband's relinquishment indorsed upon the antenuptial contract, as "all the right that I might have to inherit her property in virtue of the within marriage-contract," is sufficient under the statute of fraud.

---

FROM HAYWOOD.

---

Appeal from Chancery Court of Haywood County. H. J. LIVINGSTON, Ch.

THOMAS STEELE and MOORE & BOND for Complainants in original bill.

B. J. LEA and R. W. HAYWOOD for Complainants in cross-bill.

J. C. REID and BOND & RUTLEDGE for Respondents.

LURTON, J. The defendant, Dr. John Haywood, and Mrs. E. J. Boyce were married in 1879. Prior to the marriage they entered into a marriage-contract, which was acknowledged and registered. This contract was as follows:

"Know all men by these presents, that, whereas, Dr. John Haywood and Mrs. E. J. Boyce are contemplating intermarriage; and, whereas, it is mutually desired that they shall have and enter into a marriage-contract, enforcing the provisions and stipulations hereinafter set out; now, therefore, for this purpose and in consideration of said marriage hereafter to be consummated, it is hereby expressly contracted, agreed, and understood by and between the said Haywood and the said Mrs. Boyce that all the property, both real and personal and mixed, that she may have, own, or be entitled to at the date of the consummation of said marriage shall be and remain hers for and during their joint lives; and then, at the death of either of them, the same is to go absolutely to the survivor of them, and the same is not to be liable, in any way, for the debts, contracts, or liabilities of the said Haywood so long as she may live. In testi-

mony whereof they have hereunto set their hands, this June 25, 1879.

"(Signed)　　　　　　　　E. J. BOYCE,

"(Signed)　　　　　　　　JOHN HAYWOOD."

Upon the back of the original there was subsequently written by Dr. Haywood the following relinquishment:

"Know all men by these presents, that I hereby, out of the regard and esteem I have for my beloved wife, Mrs. E. J. Haywood, relinquish all the right that I might have to inherit her property in virtue of the within marriage-contract in case I should be the longest liver; and she on her part relinquishes all the right she might have to inherit my property in virtue of said contract, bearing date June 25, 1879. In testimony of which we hereunto affix our names, this October 14, 1882.

"(Signed)　　　　　　　　JOHN HAYWOOD,

"(Signed)　　　　　　　　MRS. E. J. HAYWOOD."

This indorsement was never acknowledged by either Dr. or Mrs. Haywood in the manner required for registration, and was, of course, never registered. No children were ever born of this marriage, and March, 1883, Mrs. Haywood died intestate, the owner in her own right of one tract of land of three hundred and twenty-five acres in Haywood County, and of an undivided interest in another tract, bought after the marriage, and conveyed to Dr. Haywood as trustee for her. This bill was filed by the heirs at law of Mrs. Haywood against Dr. Haywood to recover from him

the lands thus owned at her death. Pending the appeal to this Court Dr. Haywood died, and the cause has been revived against his heirs at law, he dying intestate.

Dr. Haywood, in his answer, denied the delivery of the deed of relinquishment to Mrs. Haywood, and much proof has been taken on this point. Four witnesses, however, testify to the fact that the original contract of marriage, with this relinquishment indorsed thereon, was seen by them in the actual custody and possession of Mrs. Haywood, and that she produced it from a satchel which she kept at the head of her bed. Before her death this contract was delivered by Mrs. Haywood to one of these witnesses, who is also one of the complainants.

There are some discrepancies in some of this proof, and all of these witnesses are interested, being heirs of Mrs. Haywood; yet, we see no reason for doubting the substantial truth of the principal facts testified to by them. The effort to contradict two of them by testimony of two servants does not, in our opinion, discredit the witnesses as to the circumstances under which the paper came into the possession of complainant. Without going into the evidence in detail, we are content to decide that the delivery of the paper to Mrs. Haywood by Dr. Haywood is sufficiently made out. Dr. Haywood was a competent witness, this not being a suit in which a judgment could be rendered either for or against an executor or

administrator; yet, though he testified in the cause upon other matters, he did not testify to the non-delivery of this ˏrelinquishment.

It has been very ably argued that antenuptial contracts cannot be rescinded or defeated after the marriage has been consummated by any contract, conveyance, or rescission agreed upon by the husband and wife, no matter how obtained or how acknowledged.

The case of *Tabb* v. *Archer*, reported in 3 Henning & Munford, Virginia Supreme Court, has been relied upon to support this position. The opinion is by Judge Tucker, a Judge of eminent learning, and he does state and support the proposition that "marriage-articles are not to be rescinded after the marriage, even by consent of the husband and wife, or by any conveyance which they or either of them can make, but may be enforced in equity, at the suit of the issue (whether *in esse* or in *ventre sa mere*), or by any other person for whose benefit such articles were intended." But this proposition, so manifestly sound when we consider precisely what was contained in it, by no means supports the view of defendants.

The case of *Tabb* v. *Archer* was this: Before the marriage the property of the expectant wife of Mr. Archer was settled upon her during the marriage, the annual proceeds only to be applied to the support and maintenance of husband and wife and their issue. It was further provided that if Mrs. Archer should die leaving issue of the

contemplated marriage or of any other marriage, that upon her death the whole of her property should go to such issue; and at her death without issue the whole should go to such persons as should then be her heirs at law. After the marriage, Mr. Archer and his wife joined in a conveyance of the property so settled to a third person for a nominal consideration, and afterward this grantee conveyed to Mr. Archer in fee. Thereupon, the mother of Mrs. Archer, as next friend of an infant in *ventre sa mere*, together with the brothers and sisters of Mrs. Archer, they being her heirs at law in default of issue, filed a bill to set aside these conveyances and to set up and enforce the marriage-contract. The Court held that the issue of Mrs. Archer, or, in default of issue, her heirs, were beneficiaries under the settlement, and that the settlement could not be set aside by any consent of husband and wife to the injury of such beneficiaries, they being *purchasers* having interests which could not be affected by any contract or conveyance entered into by the principal parties to the marriage-articles. The cases cited by the learned Judge are all cases in which persons other than the contracting parties had an interest, and it was of course held that no contract entered into by husband and wife could affect such beneficiaries. *Trevor* v. *Trevor*, 1 P. Williams, 622; *Bale* v. *Coleman*, 1 P. Williams, 142; *Griffith* v. *Buckley*, 2 Vernon, 13.

The question could only arise upon articles

where it appeared that others than the contracting parties were intended to be provided for and to be parties to it. Where the issue of the marriage are provided for, the contract will be held as made with a view to secure them the estate stipulated about, and of which they are purchasers in consideration of the marriage.

In such a case, says Mr. Powell in his work on contracts, "it would be a strange and a vain construction of such contracts, if the principal contracting, and who is evidently the person meant to be restrained thereby, should be intended to have such an estate as would enable him the very next day after their execution to defeat, by a fine, the limitations to his issue, with a view to secure which limitations the contract was entered into and a valuable consideration paid for it." Powell on Con., 40.

The same result follows if there is a limitation to the heirs of either of the contracting parties. The heirs become vested with an interest, and may set up and enforce the stipulations, notwithstanding any agreement of husband and wife. *Jenkins* v. *Remys*, 1 Lev., 150, 237; *Newstead* v. *Searles*, 1 Atk., 265.

In the marriage - contract under consideration there is no stipulation whatever concerning issue, and no limitation to the heirs of Mrs. Haywood. No persons other than Dr. and Mrs. Haywood had the slightest interest under the antenuptial agreement. In such case, if they had joined in a con-

veyance duly acknowledged as provided for conveyances by married women, there cannot be the slightest doubt but that the grantee would have obtained the estate unaffected by any limitation in this settlement.

It is equally clear that under this contract Dr. Haywood obtained an interest dependent upon his surviving his wife, and that this contingent estate he could by his own deed convey. The identity in the law of husband and wife will not prevent a conveyance by the husband to the wife from operating to vest the estate in her. Hence we see no difficulty whatever in the way of a conveyance or relinquishment by Dr. Haywood of this contingent estate to his wife.

The real difficulty in this case grows out of the fact that husband and wife join in this relinquishment, he to relinquish the right of survivorship secured to him under the contract, and she to relinquish any such right or interest secured to her in his estate by virtue of the same.

If upon a fair construction this paper is found to be a contract between husband and wife, the relinquishments being mutual and dependent the one upon the other, then it must utterly fail on account of the general disability of a *feme covert* to enter into any such contract.

That a married woman cannot bind herself by any contract or agreement with her husband is elementary. Agreements for a separation, and conveyances of property to the wife by the husband,

or to a trustee for her, in consideration of her claims to dower or distributive share, have been held as not binding upon the wife. Yet, in such cases, she has been compelled to elect between property so conveyed and her rights under the law to dower, etc. *Watkins* v. *Watkins*, 7 Yer., 283; *Parham* v. *Parham*, 6 Hum., 287.

Mrs. Haywood was not, therefore, capable of binding herself by any relinquishment of any right secured to her under this contract in his estate, or any rights which might accrue to• her independent of it. But we are of opinion that this relinquishment is not to be regarded as a contract between husband and wife or as a mutual relinquishment. We reach this conclusion upon the following considerations:

*First.*—That under this antenuptial contract Mrs. Haywood obtained no interest whatever in the property or estate of Dr. Haywood, and relinquished no right under the law as dowress or distributee. The only estate contracted about in that instrument was her own antenuptial estate, and the only stipulation concerning this was that it should be held to her sole and separate use during the marriage, and at the death of either go absolutely to the survivor.

Now, the right which Mrs. Haywood undertakes to release was such right as she had under this contract in or to the property of her husband. She had no such right, and there is no word in the contract which could for one moment, even to

a layman, suggest that she had such right. Her possible rights as dowress or distributee in his estate she does not undertake to release, nor does she surrender her contract right to her property and its proceeds during the coverture. Dr. Haywood wrote this relinquishment. He could not but know that his wife had no rights to be affected by her release, and hence his own relinquishment could not possibly have been the result of a contract for mutual releases.

*Second.*—The instrument does not purport to be a mutual contract or a joint conveyance, or the relinquishment of one in any way dependent upon the relinquishment of the other. The part which affects Dr. Haywood is entire and complete, and makes no reference to any thing done or to be done by Mrs. Haywood. The consideration recited as moving him to its execution was not a like release upon her part, but "regard and esteem" for his wife.

Under such circumstances, we will not presume or conclude that his relinquishment was intended to be dependent upon any thing done or to be done by her merely because they are found to follow each other. No greater effect, under such circumstances, ought to be given to her relinquishment than if it had been made upon a different day and upon a separate piece of paper. The consideration of love and affection is sufficient to support a conveyance by the husband to the wife, creditors out of the way. Dr. Haywood had a

contingent estate, dependent upon his surviving his wife. It was such an estate as would have passed by his deed and operated to carry the fee in event of his surviving Mrs. Haywood. The relinquishment of this interest or contingent estate to his wife operates as a deed to her. Being written upon the back of the marriage-contract, and referring to it as the "within contract," and by description and date, is a sufficient description of the interest relinquished to prevent its defeat by the statute of frauds. It was a good common law relinquishment, and, upon proof of its execution and delivery, operated to divest him of his contingent estate and vest same in Mrs. Haywood. The result is she died seized and possessed of this estate, and her heirs at law are entitled to recover same.

Reverse the decree as to the three hundred and twenty-five-acre tract, and affirm it as to the interests in the other. The heirs of Dr. Haywood will pay costs accrued to date.

Judge Snodgrass dissents.